UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN J. BARTIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:06-CV-1574 (JCH) |
| | ) |
| CITY OF BRIDGETON, et al., | ) |
| | ) |
| Defendants, | ) |

## MEMORANDUM AND ORDER

The matter is before the Court on Cross-Defendants City of Bridgeton, Walter Mutert, Major Steinman, Don Hood, and Robert Wacker's (collectively "Cross-Defendants") Motion to Dismiss Counts I, II, III, and V of Cross-Plaintiffs' Third Amended Complaint (Doc. No. 29), filed March 19, 2007. The matter is fully briefed and ready for a decision.

## BACKGROUND

By way of background, this cause of action involves events occurring at the City of Bridgeton, Missouri Police Department ("Police Department"). Officer John Bartis ("Bartis") was the commanding officer of Cross-Plaintiffs Jim Livingston ("Livingston"), Brian Pulling ("Pulling"), Dale Rowe ("Rowe"), Carl Drews ("Drews"), and Dan O'Connor ("O'Connor") (collectively "Cross-Plaintiffs"). (Third Am. Cross-Claim, Doc. No. 23 ¶ 5). In June 2004, Bartis suspended Livingston for insubordination and failing to follow orders. (Id. at Ex. 1 ¶ 5). Livingston alleges that this suspension was meant to punish him for telling Cross-Defendants[1] that Bartis used excessive force on prisoners. (Id. at ¶ 7, 11).

---

[1] Cross-Defendants allegedly failed to investigate these claims. (Id. at ¶ 7, 11).

After the suspension, Livingston and O'Connor complained to Cross-Defendants that Bartis abused prisoners. (Id. at ¶ 13-14). Livingston told Cross-Defendants that if his claims were not investigated, he would contact the Federal Bureau of Investigations ("FBI"). (Id. at ¶ 13). Cross-Defendants initiated an internal investigation and asked each Cross-Plaintiff to submit a written statement regarding Bartis' behavior. (Id. at ¶ 17). Don Hood gave Bartis a copy of these statements, which Bartis then read to other officers. (Id. at ¶ 17-18). By September 28, 2004, the information contained in these statements was known throughout the Police Department. (Id. at Ex. 1 ¶ 13-17). Eventually, Cross-Plaintiffs became dissatisfied with the internal investigation and alerted the FBI. (Id. at ¶ 22). In response to the foregoing actions of Cross-Plaintiffs, other officers became increasingly hostile towards them. (Id. at ¶ 26). Cross-Defendants allegedly ignored the other officers' behavior and retaliated against Cross-Plaintiffs by denying them promotions, failing to provide them back up, and reprimanding them. (Id. at ¶ 25-27).

The escalating tensions climaxed on February 14, 2005 when Bartis confronted O'Connor about "rumors" O'Connor had spread about Bartis. (Id. at ¶ 34-38). Bartis ordered O'Connor to follow him into the basement so they could settle their differences outside the purview of surveillance cameras. (Id. at ¶ 35). Once in the basement, Bartis allegedly punched O'Connor in the face with enough force to knock him down. (Id. at ¶ 42-46). Bartis continued his attack while O'Connor laid on the floor. (Id. at ¶ 44-46). Throughout the attack, Bartis berated O'Connor for being a "motherfucking FBI snitch." (Id. at ¶ 44). O'Connor put Bartis in a headlock and then left. (Id. at Ex. 1 ¶ 23). O'Connor contends that his injuries were so severe that he could not return to work for over a year. (Id. at ¶ 47).

In July 2005, the Police Department terminated Bartis because of the fight. (Id. at Ex. 1). Cross-Plaintiffs contend that, even after Bartis was fired, Cross-Defendants still condoned and

encouraged retaliatory conduct. (Id. at ¶ 50-58). On March 1, 2006, O'Connor was terminated for failing to return to work. (Id. at ¶ 51; Memo. in Opp'n, Doc. No. 31 Ex. 2). O'Connor believes that the real reason for his termination was that he spoke to the FBI. (Id.).

On March 10, 2006, Bartis filed suit in state court[2] against both Cross-Plaintiffs and Cross-Defendants (collectively "State Court Defendants")[3] for wrongful termination in violation of Missouri public policy, defamation, intentional interference with a business expectancy, and civil conspiracy. (Notice of Removal, Doc. No. 1 Ex. B). Bartis alleged that State Court Defendants retaliated against him for reporting their misconduct[4] by claiming he abused prisoners. (First Mot. to Dismiss, Doc. No. 18 Ex. B).

State Court Defendants moved to dismiss Bartis' cause of action. (Id.). In their motion, they alleged that Bartis could not maintain his defamation claim because their speech was absolutely privileged due to "their duty to the public and ... the police department's rules and regulations."[5] (Id. at pg. 9). Alternatively, they argued that Bartis' defamation claim failed because he could not show malice. (Id. at pg. 11). The state court granted the motion in an order stating: "Plaintiff Bartis['] claims against all [State Court] Defendants are hereby dismissed with prejudice, with [State Court]

---

[2]In the Circuit Court of St. Louis County, Missouri. (Notice of Removal, Doc. No. 1).

[3]Bartis named the City of Bridgeton, Walter Mutert, Major Steinman, Don Hood, Livingston Pulling, Rowe, Drews, and O'Connor as State Court Defendants. (Notice of Removal, Doc. No. 1 Ex. B). Bartis did not include Robert Wacker in his suit. (Id.).

[4]In his state court petition, Bartis claimed that many of the State Court Defendants had violated numerous police regulations, including being intoxicated at work and improperly selling seized evidence. (Notice of Removal, Doc. No. 1 Ex. B). Bartis claimed that after he attempted to punish officers for their misconduct, he was accused of abusing prisoners. (Id.).

[5]Cross-Defendants' counsel initially represented all of the State Court Defendants.(First Mot. to Dismiss, Doc. No 18 Ex. C). Before the cross-claims were filed, Cross-Defendants' counsel filed a motion to dismiss. Cross-Plaintiffs then hired their own counsel, who filed the cross-claims now before the court and filed a motion adopting the previously filed motion to dismiss. (Id.).

Defendants' motions to dismiss hereby granted in their entirety." (Notice of Removal, Doc. No. 1 Ex. F).

Cross-Plaintiffs originally filed their cross-claims against Cross-Defendants in state court. (Notice of Removal, Doc. No. 1 Ex. C). After Bartis' claims were dismissed in October 2006, Cross-Defendants removed to this Court. (Id.). Cross-Plaintiffs subsequently amended their cross-claims three times. The Third Amended Cross-Claim, filed on February 26, 2007, alleges the following: (I) retaliation for exercising their first amendment rights, in violation of 42 U.S.C. § 1983; (II) violation of the Missouri Sunshine Law, Mo. Rev. Stat. § 610.010 et seq. ("Sunshine Act"); (III) violation of the Missouri Whistle Blower Protection Statute, Mo. Rev. Stat. § 155.055 ("Whistle Blower Act"), as to O'Connor; (IV) wrongful discharge of O'Connor in violation of public policy; and (V) violation of the Whistle Blower Act as to Cross-Plaintiffs generally. (Doc. No. 23).

On March 19, 2007, Cross-Defendants filed the motion to dismiss now before the Court. (Doc. No. 29). Cross-Defendants assert that Count I must be dismissed because Cross-Plaintiffs were not speaking as citizens and are estopped from saying otherwise. (Id. at pg. 3-7). Cross-Defendants assert that Count II must be dismissed because it fails to state a claim and is time-barred. (Id. at pg. 7-10). Finally, they contend that Counts III and V must be dismissed because they are time-barred and fail to state a claim. (Id. at 10-12).

**MOTION TO DISMISS STANDARDS**

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Additionally, the Court is required to accept "the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005). A cause of action should not be dismissed for failure to state a claim unless, from the face of the

Complaint, it appears beyond a reasonable doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Jackson Sawmill Co., Inc. v. United States, 580 F.2d 302, 306 (8th Cir. 1978). Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982) (internal quotations and citation omitted).

When considering a supplemental state law claim, such as Counts II, III, and V, the Court must apply Missouri law. Smith v. Planned Parenthood of the St. Louis Region, 225 F.R.D. 233, 237 (E.D. Mo. 2004). The Court looks first to decisions of the Missouri Supreme Court. Blum v. Allstate Ins. Co., 296 F. Supp.2d 1037, 1039 (E.D. Mo. 2003). If no relevant decisions are available, the Court will look to Missouri appellate court decisions. Id. The Court's role is interpret state law, not fashion it. Orion Fin. Corp. of S. Dak. v. Am. Food Group, Inc., 281 F.3d 733, 738 (8th Cir. 2002). Thus, when state law is unsettled, it is the Court's duty to apply the rule it believes the Missouri Supreme Court would follow. Novak v. Navistar Int'l Transp. Co., 46 F.3d 844, 847 (8th Cir. 1995).

## **DISCUSSION**

### I. **Section 1983 Retaliation Claim**

#### A. **Did Cross-Plaintiffs Speak as Citizens?**

Cross-Plaintiffs claim that Cross-Defendants retaliated against them for exercising their First Amendment rights. Cross-Defendants assert that Cross-Plaintiffs' § 1983 claim fails because their speech was not protected by the First Amendment. They also assert that Cross-Plaintiffs are estopped from arguing otherwise.

A public employer, such as a police department, may not discharge an employee "on a basis that infringes that employee's constitutionally protected interest in freedom of speech." McGee v. Pub. Water Supply, 471 F.3d 918, 919 (8th Cir. 2006) (quoting Rankin v. McPherson, 483 U.S. 378, 383 (1987)). Axiomatically, one of the required elements of a First Amendment retaliation claim is that the employee "engaged in protected speech." Littrell v. City of Kansas City, 459 F.3d 918, 922 (8th Cir. 2006). A public employee's speech is protected only in certain circumstances. First, an employee must be speaking as a citizen on a matter of public concern. Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968). If the employee's speech does not meet this requirement, then no First Amendment cause of action arises.[6] Bradley v. James, 479 F.3d 536, 538 (8th Cir. 2007). The Supreme Court recently held that whether or not a public employee spoke as a citizen is determined by whether or not the speech was "pursuant to [his] official duties." Garcetti v. Ceballos, --- U.S. ---, 126 S. Ct. 1951, 1960 (2006). The Supreme Court, however, did not provide a comprehensive framework for determining the scope of an employee's duties. Id. at 1960-62. It merely instructed that the inquiry is a practical one focusing on the duties that the employee is actually expected to perform, rather than his formal job description. Id.

In two recent cases, the Eighth Circuit applied Garcetti. First, it held that an engineer employed by a county water company did not speak as a citizen when he made statements about a water treatment facility's safety. McGee, 471 F.3d at 921. Next, it held that a campus police officer, who accused his superior officer of being intoxicated on the job, did not speak as a citizen because he made the accusations during the course of an official investigation with which he had to cooperate. Bradley, 479 F.3d at 537-38.

---

[6]If the speech does meet these requirements, then a First Amendment claim is possible, and the Court must determine whether the government employer had an adequate justification for treating the employee differently from other members of the general public. See Pickering, 391 U.S. at 568.

Other federal courts have applied Garcetti to police officers. The Sixth Circuit held that a police officer's complaint about canine unit funding was not protected speech because overseeing and working with the canine unit was part of his daily responsibilities. Haynes v. City of Circleville, 474 F.3d 357, 364 (6th Cir. 2007). Similarly, a district court determined that reporting a fellow officer's abuse of prisoners was not protected speech because it is unquestionably an officer's duty to report the abuse of prisoners. Williams v. Riley, --- F. Supp. 2d ---, 2007 WL 763825, at *2 (N.D. Miss. Mar. 9, 2007) (granting motion to dismiss); compare Morron v. City of Middletown, 464 F. Supp. 2d 111, 119 (D. Conn. 2006) (denying a motion to dismiss because police officers who reported misconduct were entitled to put on proof that they acted as citizens). Finally, a district court held that a chief of police spoke as a citizen when he wrote letters "as a resident and taxpayer" to the city council complaining of the lack of police funding. Sassi v. Lou-Gould, No. 05CIV10450 (CLB), 2007 WL 635579, at *3-4 (S.D.N.Y. Feb. 27, 2007).

The Court finds Cross-Plaintiffs' statements were made about a matter of public concern, police brutality. The Court also finds that it is possible Cross-Plaintiffs can prove that their duties, as a practical matter, did not entail reporting misconduct. See Morron, 464 F. Supp. 2d at 119. This conclusion, however, does not end the Court's inquiry because Cross-Defendants allege that Cross-Plaintiffs are judicially estopped from asserting that they spoke as citizens.

### B.     Are Cross-Plaintiffs Estopped from Arguing They Spoke as Citizens?

Cross-Defendants counsel initially represented the State Court Defendants. (First Mot. to Dismiss, Doc. No. 18 Ex. B). While representing the State Court Defendants, Cross-Defendants' counsel filed a motion to dismiss Bartis' claims. (Id.). Cross-Plaintiffs then hired their own counsel in order to bring cross-claims. (Id. at Ex. C). Their new counsel adopted the previously filed motion

to dismiss, which asserted that Bartis' defamation claim must be dismissed because the State Court Defendants' speech was absolutely privileged. (Id. at Ex. B-C). The motion stated that:

> Here, pursuant to their duty to the public and pursuant to the police department's rules and regulations, the Defendant officers reported what they suspected was unlawful conduct in the form of excessive force against detainees to their superiors, which reports led to an internal affairs and FBI investigation. ... If police officers who are sworn "To Protect and Serve" and required to report criminal conduct by fellow officers are subject to defend against lawsuits for making those required reports, those officers will be discouraged from reporting other police misconduct at all. Consequently, the administration of justice will suffer.

(Id. at Ex. B). The motion to dismiss also asserted that Bartis' defamation claim must be dismissed because he could not show malice. (Id.).

The purpose of judicial estoppel is to "protect the integrity of the judicial process." Stallings v. Hussmann Corp., 447 F.3d 1041, 1047 (8th Cir. 2006) (citing Total Petroleum, Inc. v. Davis, 822 F.2d 734, 738 n, 6 (8th Cir. 1987)), and prevent parties from playing "fast and loose with the courts to suit the exigencies of self interest." In re Coastal Plains, Inc., 179 F.3d 197, 205 (5th Cir. 1999). A court invokes judicial estoppel when a party abuses the judicial process by making a knowing misrepresentation to the court or tries to perpetrate a fraud upon the court. Id. Judicial estoppel, however, is an extraordinary remedy and should only be applied when a party's inconsistent behavior will result in the miscarriage of justice. Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir. 1996).

The Supreme Court has observed that judicial estoppel is a flexible doctrine that is "probably not reducible to any general formulation of principle." New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001). The Supreme Court has outlined three factors typically used to determine the applicability of judicial estoppel. Id. First, a party's later position must be "clearly inconsistent with its earlier position." Id. Second, a party must have succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position would create a perception that either

the first or second court was misled.[7] Id. Finally, courts look at whether the party seeking "to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 751.

Upon consideration, the Court will not judicially estop Cross-Plaintiffs from alleging that they were speaking as citizens. In Missouri, when a court does not state the grounds for granting a motion to dismiss, the reviewing court examines each of the grounds asserted by the moving party. Kunzie v. City of Olivette, 184 S.W.3d 570, 572 (Mo. 2006). Courts proceed in this manner because the dismissal was presumably based on one of the grounds raised, but only one ground is necessary to support the dismissal. See Wenthe v. Willis Corroon Corp., 932 S.W.2d 791, 793-94 (Mo. Ct. App. 1996). Cross-Plaintiffs adopted both of the State Court Defendants arguments to dismiss the defamation claim. The Court may draw the reasonable inference that the state court granted the motion to dismiss based on the lack of malice argument. Thus, the Court cannot say that an inconsistent position was successful. Additionally, no miscarriage of justice will result from Cross-Plaintiffs proceeding with their § 1983 claim. They will still have to prove they were speaking as citizens. Cross- Defendants are still free to assert that Cross-Plaintiffs have admitted certain facts. Cross-Defendants motion as it relates to Count I is denied.

**II      The Sunshine Act**

Cross-Plaintiffs allege that Cross-Defendants violated the Sunshine Act by making public the written reports about Bartis' behavior. Cross-Defendants assert that no claim exists for making a record public, the records were not made public, and the suit is untimely.

---

[7] The Supreme Court explains that a lack of success in the prior proceeding means that a party's later inconsistent position introduces "no risk of inconsistent court determinations and thus poses little threat to judicial integrity." New Hampshire, 532 U.S. at 751 (internal citations omitted).

The Sunshine Act was enacted to promote the public policy of open government. Kan. City Star Co. v. Fulson, 859 S.W.2d 934, 939 (Mo. Ct. App. 1993). It requires, with certain exceptions, that public records and meetings are presumed open to the public. See Mo. Rev. Stat. § 610.010 et seq.; see also State ex rel. Mo. Local Gov't Ret. Sys. v. Bill, 935 S.W.2d 659, 664 (Mo. Ct. App. 1996). It contains a statute of limitations requiring that a "[s]uit for enforcement shall be brought within one year from which the violation is ascertainable and in no event shall it be brought later than two years after the violation." Mo. Rev. Stat. § 610.027(5). A violation is ascertainable "when the fact of damage can be discovered or made known, rather than when a plaintiff actually discovers the injury or wrongful conduct; thus, ascertainability is an objective determination." Colombo v. Buford, 935 S.W.2d 690, 696 (Mo. Ct. App. 1996); see also Armstrong v. Adair County, 990 S.W.2d 64, 68 (Mo. Ct. App. 1999).

Upon consideration, Cross-Plaintiffs' Sunshine Act claim is time-barred. Cross-Plaintiffs attached a copy of the Police Department's findings of fact regarding the termination of Bartis to its Third Amended Cross-Claim. (Doc. No. 23 Ex. 1).[8] These findings show that the contents of the written reports were well known throughout the Police Department as early as September 28, 2004 and no later than February 15, 2005. (Id. at Ex. 1 ¶ 13-17). Clearly, Cross-Plaintiffs should have been aware of the disclosure of the reports by February 15, 2005. Thus, they had until February 15, 2006 to bring a cause of action based on this disclosure. They first brought this claim on May 30, 2006, more than three months after the limitations period ran. (Notice of Removal, Doc. No. 1 Ex. C). Cross-Defendants' motion is granted with respect to Claim II.

---

[8]Cross-Plaintiffs suggest that the Court must not rely on any evidence outside the pleadings. (Doc. No. 32). When ruling on a motion to dismiss, the Court generally does not consider any evidence outside the pleadings. Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 n. 4 (8th Cir. 2003).The Court, however, has discretion to considers exhibits attached to the complaint. Id. (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)).

**III    The Whistle Blower Act**

Cross-Defendants contend that Cross-Plaintiffs cannot maintain an action under Whistle Blower Act because they are not "state employees." Alternatively, they assert that O'Connor's claim is time-barred. Cross-Plaintiffs contend that excluding them from the definition of "state employee" would contravene the statute's purpose.

The Whistle Blower Act, in relevant part, provides:

> 1. No supervisor or appointing authority of any state agency shall prohibit any employee of the agency from discussing the operations of the agency, either specifically or generally, with any member of the legislature, state auditor, attorney general, or any state official or body charged with investigating such alleged misconduct.
>
> 2. No supervisor or appointing authority of any state agency shall: (1) Prohibit a state employee from or take any disciplinary action whatsoever against a state employee for the disclosure of any alleged prohibited activity under investigation or any related activity....

Mo. Rev. Stat. § 105.055(1)-(2).

At issue here is whether Cross-Plaintiffs are considered "state employee[s]" under the Whistle Blower Act. In Missouri, courts must give effect to the language of a statute as written. Hinnah v. Dir. of Revenue, 77 S.W.3d 616, 620 (Mo. 2002). Courts cannot read into a statute "legislative intent contrary to intent made evident by plain language." Giesler v. Dir. of Revenue, 139 S.W.3d 216, 218 (Mo. Ct. App. 2004). Undefined words are given their "plain and ordinary meaning as found in the dictionary in order to ascertain the intent of lawmakers." Asbury v. Lombardi, 846 S.W.2d 196, 201 (Mo. 2001). In construing a statute it is appropriate "to take into consideration statutes involving similar or related subject matter when such statutes shed light upon the meaning of the statute being construed, even though the statutes are found in different chapters and were enacted at different times." Cook Tractor Co. v. Dir. of Revenue, 187 S.W.3d 870, 874 (Mo. 2006). When the legislature enacts a statute referring to terms "that have had other judicial or legislative meaning attached to

them, the legislature is presumed to have acted with knowledge of that judicial or legislative action." Citizens Elec. Corp. v. Dir. of Dep't of Revenue, 766 S.W.2d 450, 452 (Mo. 1989). Although it is not binding, the Court may look to the construction of whistle blower statutes in other states when there is an absence of Missouri case law. Agri-Foods, Inc. v. Indus. Comm'n, 511 S.W.2d 898, 903 (Mo. Ct. App. 1974).

In other contexts, Missouri courts have determined who is a state employee. The Missouri workers' compensation statute defines state employee as "any person who is an elected or appointed official of the state of Missouri or who is employed by the state and earns a salary or wage in a position normally requiring the actual performance by him of duties on behalf of the state." Mo. Rev. Stat. § 105.800 (1986).[9] The Missouri Supreme Court interpreted this statute to mean that, in the context of workers' compensation, a state employee is a person who is controlled by the state of Missouri. Smith v. Thirty-Seventh Judicial Circuit, 847 S.W.2d 755, 758 (Mo. 1993). Thus, a chief deputy juvenile officer was a state employee because the state controlled his job. Id. at 759; see Boone County v. County Employees' Ret. Fund, 26 S.W.3d 257, 263-65 (Mo. Ct. App. 2000) (employees could not participate in county retirement plan when they were controlled by the state).

On two occasions, the Missouri Supreme Court interpreted what employees are covered by the State Legal Expense Fund, which, in relevant part, extends to "any officer or employee of the State of Missouri or agency thereof." See Cates v. Webster, 727 S.W.2d 901, 904 (Mo. 1987) (citing Mo. Rev. Stat. § 105.711). Cates held that a bailiff was not an officer of the state because his salary was paid by the county and other statutes suggested that judicial officials, such as clerks, are only state employees if the state pays them. Id. at 904-07; see Boone County, 26 S.W.3d at 260-63

---

[9]The statute was later amended to include judicial officials. See Mo. Rev. Stat. § 105.800 (2003).

(holding employees could not participate in state retirement fund because the county paid them). A more recent case held that the St. Louis Police Board is "an agency of the state, ... as opposed to a local or municipal agency," meaning that its employees are state employees, because the state, through statutes, exercises almost complete control over it. Smith v. State, 152 S.W.3d 275, 278 (Mo. 2005).

A recent Supreme Court dissent discusses what employees are covered by state whistle blower statutes. See Garcetti, 126 S. Ct. at 1970-71 nn. 8-11 (Souter, J., dissenting).[10] The dissent noted that states have enacted two types of whistle blower statutes, those that include all public employees, and those, like the Whistle Blower Act, that "stop at state employees." Id. at 1970. The statutes covering public employees generally use the term "public employee" or explicitly provide that the law extends to employees of "counties," "municipalities," and "political subdivision of the state." see, e.g., Del. Code. Ann., Tit. 29 § 5115 (covering public employees); see, e.g., Fla. Stat. § 112.3187(3)(b) (explicitly including county and municipal employees). Conversely, statutes only protecting state employees generally use the term "state employee" or define the term employee to mean "a person employed by a state agency." see, e.g., Ala. Code § 36-26A-1 et seq. (using term state employee); see, e.g., Colo. Rev. Stat. § 24-50.5-102 (defining employee).

Upon consideration, the Court finds that officers of the Police Department are not state employees under the Whistle Blower Act.[11] Local police departments are not state agencies because Missouri neither pays for nor controls them. See Smith, 152 S.W.2d at 279-80 (citing State ex rel. Hawes v. Mason, 54 S.W. 524, 529 (1899)). Moreover, the legislature is aware that the Missouri Supreme Court interpreted the term "state employee" in a way that excludes municipal employees.

---

[10]Justice Ginsburg and Justice Stevens joined in the dissent. Garcetti, 126 S.Ct. at 1963.

[11]Cross-Plaintiffs seem to assert that cities are state agencies. This argument is meritless.

See Thirty-Seventh Judicial Circuit, 847 S.W.2d at 759.[12] Finally, a comparison of the Whistle Blower Act with other state statutes supports the Court's decision. Compare Mo. Rev. Stat. § 105.055 with Del. Code. Ann., Tit. 29 § 5115; Colo. Rev. Stat. § 24-50.5-102. Thus, Counts III and V will be dismissed.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Cross-Defendants' Motion to Dismiss (Doc. No. 29) is **DENIED** in part and **GRANTED** in part. Counts II, III, and V are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Cross-Plaintiffs' Motion for Oral Arguments (Doc. No. 35) is **DENIED**.

Dated this 18th day of May, 2007.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[12]Specifically, the legislature was aware of this interpretation before it amended the Whistle Blower Act in 2000. See Whistleblower-Employee Protection, § A, 2000 Mo. Laws. 788 (amending Mo. Rev. Stat. §105.055).